Search Warrant

# UNITED STATES DISTRICT COURT
## for the
## District of Arizona

In the Matter of the Search of )
)
**Wireless Telephone, Verizon E-Talk with IMEI** )
**35589611021326, Located in the Evidence** )   Case No.   21-4179mb
**Control Room at the FBI Office in Flagstaff, AZ.** )
)

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer.

An application by a federal law enforcement officer for the government requests the search of the following person or property located in the   District of Arizona
*(identify the person or describe the property to be searched and give its location)*:

### SEE ATTACHMENT A

The property to be searched, described above is in the District of Arizona

### SEE ATTACHMENT B

I find that the affidavit(s), or any recorded testimony, have been communicated by reliable electronic means and establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before   July 6, 2021
                                                                                                   *(not to exceed 14 days)*

[X] in the daytime 6:00 a.m. to 10 p.m.   [ ] at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the search warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave a search warrant copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
                 Camille D. Bible                                            .
                          *(Name)*

[ ] I find that immediate notification may have an adverse result as specified in 18 U.S.C. §3103a (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*   [ ] for _____ days *(not to exceed 30).*
                                                                             [ ] until, the facts justifying, the later specific date of _____ .

Telephonically Sworn
Date and Time Issued:                              **Camille D. Bibles**   Digitally signed by Camille D. Bibles
                         _____                                   Date: 2021.06.21 16:16:29 -07'00'
                                                                     *Judge's Signature*

City and State:   Flagstaff, Arizona                           _____
                                                                *Printed Name and Title*

| Return | | |
|---|---|---|
| Case No.: 21-4179mb | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken, and name of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing Officer's Signature*

_____
*Printed Name and Title*

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of:

**Wireless Telephone, Verizon E-Talk with IMEI 35589611021326, Located in the Evidence Control Room at the FBI Office in Flagstaff, AZ**

Case No. 21-4179mb

## ELECTRONIC APPLICATION FOR SEARCH AND SEIZURE WARRANT

I, <u>F.B.I. Special Agent Jordan Filippi</u>, a federal law enforcement officer, request an electronic search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.
Located in the District of Arizona

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

[X] evidence of a crime;

[ ] contraband, fruits of crime, or other items illegally possessed;

[X] property designed for use, intended for use, or used in committing a crime;

[ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| Title 21 U.S.C. §§ 841(a)(1) | Possession with Intent to Distribute Methamphetamine |

The application is based upon the following facts:

[X] Continued on the attached sheet (see attached **Affidavit**).

[ ] Delayed notice _____ days (give exact ending date if more than 30 _____ ) is under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Ryan McCarthy /s/ RJM

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 6/21/2021

*Applicant's Signature*

Jordan Filippi, F.B.I. Special Agent
*Printed Name and Title*

__X__ Sworn by Telephone

Date and time issued: _____

City and State: Flagstaff, Arizona

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2021.06.21 16:02:58 -07'00'
*Judge's Signature*

Honorable Camille D. Bibles, U.S. Magistrate Judge
*Printed Name and Title*

## ATTACHMENT A
## Property/Premises to be Searched

1.  The property to be searched is specifically one (1) wireless telephone currently located at FBI Flagstaff Resident Agency, 5900 South Pulliam Drive, Flagstaff, Arizona 86001, henceforth referred to as "Device":

    a.  Wireless Telephone, Verizon E-Talk model number of KAZ-N20 and a serial number of N202009010132 and an IMEI of 35589611021326.



## ATTACHMENT B –
### Items to be seized:

- Device information to include but not limited to unique identifying information about the phone, subscriber information, and information in relation to the make, model, and features of the cellular telephone.

- Information about the applications installed on the cellular telephone, the usage of the applications, and the information collected, sent or received by the applications.

- Contact information stored on the cellular device.

- Call log records stored on the cellular device.

- SMS/MMS sent and received messages stored on the cellular device.

- User account information maintained within the physical storage of the phone to include but not limited to the user accounts utilized by the phone and the applications installed on the phone.

- Stored voicemails maintained on the cellular device.

- Wireless network information stored on the cellular device.

- Data files maintained on the cellular device to include but not limited to audio, video, images, and databases.

- Location information of the cellular device, data files, or applications maintained on the cellular device.

This warrant authorizes a review of records and information seized, copied or disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review

## AFFIDAVIT

I, Jordan Filippi (Affiant), a Special Agent of the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state as follows.

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search and seizure warrant to search and seize instrumentalities, fruits, and evidence of a violation of Title 21, United States Code, Section 841(a), Possession with Intent to Distribute a Controlled Substances.

2. Your Affiant has been employed as a Special Agent since March of 2016 and has worked crimes involving drugs and other controlled substances. Your Affiant has received training at the FBI Training Academy and has experience including, but not limited to, investigating major crimes that occur on Indian Reservations and drug related investigations in Northern Arizona. Prior to being employed with the FBI, your Affiant was employed as a police officer with the Bellevue Police Department in Bellevue, NE for 7 ½ years. During my law enforcement career, I have worked in the capacity of the case agent and co-case agent on numerous major crimes related to Title 18 U.S.C and Title 21 U.S.C.

3. I have been employed as a Special Agent with the FBI for 5 years and have worked crimes involving drugs and other controlled substances. I have attended numerous trainings regarding investigations into drug related crimes. I am currently the

Northern Arizona Safe Streets Task Force Coordinator, charged with managing the investigative activities of the Task Force and its Task Force Officers (TFO). The Task Force is comprised of five full time TFOs and numerous part time TFOs, all investigating drug related offenses.

4. By virtue of my employment as a Special Agent, I have performed various tasks, which include, but are not limited to:

    a. Functioning as a surveillance agent, thus observing and recording movements of persons trafficking in drugs and those suspected of trafficking in drugs;

    b. Interviewing witnesses, confidential sources (CS) and sources of information (SOI) relative to the illegal trafficking of drugs and the distribution of monies and assets derived from the illegal trafficking of drugs (laundering of monetary instruments);

    c. Functioning as a case agent, entailing the supervision of specific investigations involving the trafficking of drugs and the laundering of monetary instruments.

5. In the course of conducting drug investigations, I have personally interviewed informants and persons involved in the distribution of illegal drugs. I have consulted with other experienced investigators concerning the practices of drug traffickers and the best methods of investigating them.

6. In preparing this affidavit, I conferred with FBI Special Agents and other law enforcement officers who share the opinions and conclusions stated herein.

Furthermore, I have personal knowledge of the following facts or have learned them from the individual(s) mentioned herein. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Specifically, the investigation uncovered a black backpack, located inside of the vehicle during a traffic stop, that contained a large quantity of methamphetamine and a black cellular phone described in Attachment A ("Device"). The occupants of the vehicle were CHRISTINA YAZZIE (driver) and MAURICE NEZ (passenger.) The item that is the subject of the search and seizure applied for in this affidavit is more specifically described in Attachment A. These violations occurred in Tuba City, Arizona, a location within the District of Arizona and within the boundaries of Navajo Nation Indian Reservation, which is a federally recognized tribe.

8. Based on training and experience, your Affiant knows cell phone records may contain evidence of the unlawful purchase, possession, and/or distribution of controlled substances, including such things as: when and where drug sales and/or purchases were made; the identity of, or information that may lead to the identity of, the source(s) of the controlled substances; and the identity of, or information that may lead to the identity of, purchasers of the controlled substances or photographs or videos of drugs, drug transactions, or drug manufacturing or production.


## CURRENT INVESTIGATION

9. On April 16, 2021, a Tuba City police officer was conducting routine patrol, in a fully marked Navajo Nation patrol unit, in the south area of Tuba City, Arizona. The officer was driving east bound on Maloney Street when the officer observed a 2007 Chevrolet Malibu traveling with an inoperable front right head lamp. The officer activated his lights and initiated a traffic stop on the vehicle. YAZZIE was the driver and registered owner of the car. NEZ was in the front passenger seat of the car.

10. YAZZIE was unable to provide vehicle registration or a driver's license to the officer. The officer queried law enforcement databases which revealed YAZZIE did not have a driver's license. YAZZIE stated the passenger in the front passenger seat was "Mo" AKA MAURICE NEZ. The officer asked YAZZIE if she would be comfortable with NEZ driving her vehicle, since she was legally unable to drive. YAZZIE confirmed, at which point the officer spoke with NEZ to confirm whether he had a valid driver's license. NEZ confirmed he had a valid driver's license, however, stated he did not have a driver's license on his person. The officer queried NEZ's records to confirm whether or not he had a valid driver's license. The officer discovered that NEZ had an active Tribal arrest warrant issued on August 5, 2020. The officer placed NEZ under arrest. The officer read NEZ his Miranda Rights, which he understood, but he did not want to answer any questions without a lawyer present.

4

11. The officer re-approached YAZZIE and asked whether there was anything illegal inside her vehicle. YAZZIE replied no. The officer requested for consent to search the vehicle and YAZZIE affirmed via an up and down head nod. Prior to the officer conducting his search of the vehicle, YAZZIE told the officer the black bag in the vehicle belonged to NEZ. The officer located two large bottles of alcoholic beverages underneath the black bag, which are contraband items on the Navajo Nation Indian Reservation. The following items were identified in the black bag:

- Device (a black cellular phone described in Attachment A);

- (1) Ziploc bag with a white crystal and powdery substance; approximately 449 grams;

- (1) Ziploc bag with a white crystal and powdery substance; approximately 188 grams;

- (1) Ziploc bag with a white crystal and powdery substance; approximately 156 grams;

- Multiple plastic bags;

- Triton T2 Myweigh digital scale;

- Weighmax with white powdery substance;

- Two (2) plastic bags with a green leafy substance;

- Six (6) Hornady 9mm luger rounds;

- Razor;

- US Currency: $1,460.00.

12. On April 16th, 2021, Criminal Investigator Rex Butler (CI Butler), of the Navajo Nation Police Department, interviewed YAZZIE. CI Butler advised YAZZIE of her Miranda Rights, which she understood and agreed to speak with CI Butler without a lawyer present. YAZZIE stated she was driving on Highway 160 near the Tuba City fairgrounds when she noticed a male walking along the roadway. YAZZIE recognized the person as being "Mo" AKA MAURICE NEZ. NEZ asked YAZZIE for a ride to the area of south Tuba City. YAZZIE agreed to take NEZ to that area, and he got in the front passenger seat of the vehicle. YAZZIE stated NEZ got in the vehicle with a black backpack and a bottle of alcohol. Once inside of her vehicle, NEZ placed the black backpack in the rear seat. YAZZIE told CI Butler once they were in the area of south Tuba City a police officer turned on their lights to stop them. As YAZZIE was pulling over and coming to a stop, NEZ started to fidget and started to reach for his door handle, as if he was going to get out. YAZZIE grabbed his hand and told him not to get out and run. YAZZIE told the officer the black backpack belonged to NEZ and he got into her car with it when she picked him up.

13. On May 17, 2021, items of evidence obtained from the April 16, 2021, search of the vehicle were transferred from Tuba City Police Department to the FBI Phoenix Division custody by your Affiant. The items are currently in the possession of the Flagstaff Resident Agency, 5900 S. Pulliam Drive, Flagstaff, AZ 86001. The items transferred include, but are not limited to:

    a. Device (a black cellular phone described in Attachment A);

    b. (1) Ziploc bag with a white crystal and powdery substance; approximately 449 grams;

    c. (1) Ziploc bag with a white crystal and powdery substance; approximately 188 grams;

    d. (1) Ziploc bag with a white crystal and powdery substance; approximately 156 grams;

14. At the FBI Office in Flagstaff, your Affiant field tested a quantity of the white crystal-like substance out of one of the plastic bags. The substance tested positive for the presence of methamphetamine. In your Affiant's training and experience, as well as the experience and training of other law enforcement officers with whom your Affiant has had discussions, this amount of methamphetamine is consistent with distribution on

the Navajo Nation Indian Reservation. Particularly when considered with the digital scale, multiple plastic bags, and U.S. currency.

15. Based upon my training and experience, as well as the experience and training of other law enforcement officers with whom your Affiant has had discussions, your Affiant knows that drug traffickers frequently use cellular phones and other electronic devices to arrange for the purchase and/or sale of controlled substances, and to document their possession and/or distribution of controlled substances with photographs or videos. In my training and experience, I know that the devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the devices first came into the possession of the FBI.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

16. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

17. There is probable cause to believe that things that were once stored on the Devices may still be stored there, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or

8

even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or

delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

  d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

18. Forensic evidence: As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

  a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of

USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

  b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

  c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

  d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

11

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19. Nature of examination: Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

20. Manner of execution: Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## AUTHORIZATION REQUEST

21. Based upon your affiant's training, experience, and observations your affiant submits that there is probable cause to believe that in the Device described in Attachment A, there exists information and data constituting evidence, fruits or instrumentalities of violations of 21 U.S.C. § 841(a)(1), which makes it illegal to possess for the intent to distribute a controlled substance.

22. Based on the forgoing information, I request that the Court issue the proposed search warrant authorizing examination of the Device described in Attachment A to seek the items described in Attachment B.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

_____
Special Agent Jordan Filippi
Federal Bureau of Investigation

Subscribed and sworn to before me on _____ June 21 _____, 2021

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2021.06.21 16:02:14 -07'00'

UNITED STATES MAGISTRATE JUDGE

13